# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CLEARESULT CONSULTING, INC.** | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 17-837 |
| | : | |
| **ENERNOC, INC.,** *et al.* | : | |

**KEARNEY, J.**                                                                                                                October 16, 2017

## MEMORANDUM

The steps taken by businesses buying and selling multi-million dollar assets often include an expression of interest, confidential due diligence, a negotiated asset purchase agreement setting terms and expectations to reach the end of the transaction at a closing when all final documents are signed and assets legally transferred. A disappointed buyer may look back and believe the sellers offered inaccurate information during the due diligence to induce a purchase agreement or later breached the purchase agreement by failing to provide the promised accurate information before the closing. As a result, the buyer may sue for breach of the purchase agreement and possibly fraud in representations leading to the purchase agreement. But the buyer cannot sue claiming the failure to meet the conditions of the purchase agreement is both a breach of contract and fraud. When, as today, we find the buyer pleads a breach of the purchase agreement subject to factual defenses and specific misrepresentations leading to signing a purchase agreement, we deny the sellers' motion to dismiss these claims but dismiss the buyers' duplicative claim for fraud arising from the breach of the same conditions in the purchase agreement.

I. **Alleged facts.**

Today, we review buyer CLEAResult Consulting, Inc.'s claims the sellers EnerNOC, Inc., Global Energy Partners, Inc., and Global Energy Partners, LLC breached the terms of an agreement to sell assets, fraudulently induced CLEAResult to buy the assets, and made fraudulent misrepresentations to CLEAResult after signing the agreement.

In December 2015, CLEAResult learned EnerNOC, and its wholly owned subsidiaries Global Inc. and Global LLC (collectively "Sellers"), wanted to sell Global Inc.'s subsidiary Utilities Purchase Group ("Utilities").[1] In February 2016, CLEAResult signed a letter of intent to buy Utilities from the Sellers.[2] CLEAResult began its due diligence the same month.[3] During the due diligence period, the Sellers provided CLEAResult multiple versions of Utilities' business pipeline of projects and services.[4] The pipeline included when Sellers expected to earn revenue from each project.[5]

On May 3, 2016, after CLEAResult exhausted its due diligence, CLEAResult, EnerNOC, Global Inc., and Global LLC signed an Asset Purchase Agreement setting the terms for CLEAResult to buy Utilities.[6] In the Agreement, the Sellers represented and warranted, among other things: (1) providing accurate and complete financial statements conforming with generally accepted accounting principles[7]; (2) since December 31, 2015, no events occurred resulting in materially adverse effects to Utilities[8]; (3) since December 31, 2015, Utilities had not been materially damaged, and had not experienced material loss[9]; and, (4) no customer or supplier notified the Sellers of an intent to terminate or adversely modify an existing relationship with Utilities[10].

The May 3, 2016 Agreement required the Sellers to certify at closing: (1) their representations and warranties are true and correct[11]; (2) each Seller complied and performed all

covenants, conditions, and obligations in the Agreement[12]; and (3) no material adverse effect occurred between the signing of the certificate and the closing date.[13] The Sellers also agreed to provide a projects schedule identifying all end users of Utilities' contracts and services.[14] The Sellers created the closing projects schedule in an excel spreadsheet identifying each project name and identification number, project status, and whether Utilities entered into certain contracts with the end users including participation agreements and access agreements.[15]

The parties closed on May 31, 2016. Shortly thereafter, CLEAResult learned the Sellers did not accurately represent Utilities's status during the course of due diligence and closing. CLEAResult twice demanded indemnity alleging Sellers breached the Agreement.[16] Sellers rejected CLEAResult's indemnity demands.[17] Less than a year after May 31, 2016 closing, CLEAResult reclassified $3.8 million dollars of revenue associated with projects listed in the closing schedule as cancelled, disqualified, on-hold, or requiring a reimbursement to the customer for failing to reach milestones.[18]

CLEAResult now sues the Sellers for breaching the Agreement, fraudulently inducing it to sign the Agreement, and making fraudulent misrepresentations to CLEAResult after signing the Agreement.

## II. Analysis

The Sellers move to dismiss arguing they did not breach a contract. The Sellers also move to dismiss the fraud claims arguing CLEAResult does not satisfy the specificity required for fraud claims by Fed. R. Civ. P. 9(b), and the fraud claims are improperly bootstrapped to a breach of contract claim, are not based on statements of material fact, and CLEAResult could not justifiably rely on the representations.[19]

### A. CLEAResult pleads a breach of contract.

CLEAResult alleges Sellers breached the Agreement by (1) failing to disclose material adverse effects and material damage or loss against Utilities; (2) failing to disclose customers' intent to adversely modify their relationship with Utilities; (3) misrepresenting Utilities' financial statements provided to CLEAResult and failing to provide financial statements in conformity with GAAP; and (4) providing a false and misleading closing projects schedule and closing certificate. Sellers argue (1) CLEAResult failed to satisfy the Agreement's indemnification before suing; (2) CLEAResult's alleged material adverse effects do not satisfy the definition of "material adverse effects"; (3) Sellers provided an accurate closing schedule and closing certificate and CLEAResult accepted full responsibility to make its own evaluation of the schedule; and, (4) the financial statements conformed with GAAP.

To plead breach of contract, CLEAResult must allege "first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by the contract; and third, the resultant damage to the plaintiff."[20] CLEAResult alleges the existence of a contract: the Agreement entered into between CLEAResult and Sellers for CLEAResult's purchase of Utilities.[21] CLEAResult alleges Sellers breached the Agreement because Sellers failed to disclose material adverse effects occurred on Utilities, failed to disclose material damage and loss on Utilities, provided materially inaccurate and misleading closing deliverables, and failed to provide financial statements in conformity with generally accepted accounting principles.[22] CLEAResult alleges the breaches resulted in CLEAResult suffering damages.[23]

The Sellers' arguments raise questions of fact requiring discovery and possibly trial. The Sellers ask us to find, as a matter of law, CLEAResult failed to satisfy the procedure for indemnification before initiating this lawsuit, the material adverse effects alleged are exempt in

4

the Agreement's definition of "material adverse effect", the Sellers provided CLEAResult with accurate and true closing deliverables, and the financial statements provided to CLEAResult were GAAP compliant. We cannot address these factual arguments today. We examine only the complaint. CLEAResult pleads breach of contract.

### B. CLEAResult pleads fraudulent inducement based on the Sellers' representations during due diligence but fails to plead fraud for Sellers' representations after signing the Agreement.

CLEAResult alleges the Sellers fraudulently induced it to sign and close the Agreement by misrepresenting and concealing material facts during the course of due diligence and closing. The Sellers argue CLEAResult's claim is improperly "bootstrapped" to its breach of contract claim, and CLEAResult fails to satisfy the heightened pleading standard applied to claims of fraud under Fed. R. Civ. P. 9(b).[24]

#### 1. Delaware law applies to CLEAResult's fraudulent inducement and fraud claims.

The parties dispute whether Delaware or California law applies to CLEAResult's fraudulent inducement and fraud claims. The Agreement contains a choice of law provision requiring it to be governed and construed under Delaware law.[25] CLEAResult argues the choice of law provision is narrowly written and does not apply to claims other than breach of contract. CLEAResult argues California law should apply to the fraud claims. The Sellers, seeming to concede the choice of law provision as written does not encompass claims outside breach of contract, argue CLEAResult offers the incorrect choice of law test and offers a different choice of law analysis. The Sellers argue Delaware law should apply to the fraud claims.

A federal court sitting in diversity applies the choice of law principles of the forum state.[26] CLEAResult argues Delaware courts apply the "most significant relationship" test to determine whether parties' chosen law applies to tort claims. Sellers argue Delaware courts

apply contractually chosen law to tort claims unless the chosen law "lacks a substantial relationship to the parties or transaction or applying the law of the chosen state will offend a fundamental policy of a state with a material greater interest." Delaware case law is inconsistent regarding the test governing whether a choice of law provision applies to tort claims. But this inconsistency is inconsequential here because both tests lead us to apply Delaware law.

Under the Sellers' test, Delaware has a substantial relationship to the parties and transaction, and California does not have a materially greater interest than Delaware in applying its law. "A business entity organized under Delaware laws bears a substantial, significant, and material relationship to the state of Delaware."[27] "Moreover, Delaware has a substantial interest in enforcing this voluntarily negotiated contract clause that explicitly designates Delaware law to govern. That interest is not overcome by any other state's materially greater interest."[28] Delaware also has a substantial interest in ensuring its citizen's ability to use Delaware law as a "common language for their commerce relationships."[29] The significance of Delaware's public policy regarding choice of law provisions is highlighted in section 2708 of Title 6 of the Delaware Code. Section 2708 requires a choice of law provision "shall conclusively be presumed to be a significant, material, and reasonable relationship with [Delaware] and shall be enforced whether or not there are other relationships with this State."[30]

EnerNOC is a Delaware corporation with a substantial, significant, and material relationship to Delaware. Moreover, all parties voluntarily agreed to create a substantial relationship with Delaware by voluntarily agreeing to have Delaware law govern their relationship.[31] The only parties organized under California law here are Global Inc. and Global LLC, but they are located in Massachusetts and argue we should apply Delaware law. CLEAResult, a Texas corporation located in Texas, is the only party asking us to apply

6

California law.  Even assuming California had a fundamental policy offended by application of Delaware law, California does not have an interest materially greater than Delaware's interest in enforcing the choice of law provision.  California's interest in protecting a Texas corporation located in Austin, Texas cannot defeat Delaware's strong policies and interests.  Under this test, Delaware has a substantial relationship with the transaction and parties, and California does not have a materially greater interest in applying its law.

Under CLEAResult's test, Delaware has the "most significant relationship" to the events at issue and the parties.  In deciding which state has the most significant relationship, we consider factors including: the needs of the interstate system; the relevant policies of the forum; the relevant policies of other interested states and the relative interests of those states; the protection of justified expectations; basic policies underlying the particular field of law; certainty, predictability, and uniformity of result; and ease in determination and application of the law to be applied.[32]  When applying these factors, we take into account: where the injury occurred; where the conduct causing the injury occurred; the place of incorporation and place of business of the parties; and where the relationship between the parties is centered.[33]

At least five of these seven factors favor Delaware law.  As discussed above, Delaware has a strong interest in applying its own law and California's interests in applying its law are not relatively stronger than Delaware's interests.  Applying Delaware law to all claims would protect justified expectations because the parties chose Delaware law to govern their relationship.  Application of the same state law to the fraud claims as applied to the breach of contract claim would provide greater certainty, predictability, and uniformity of result.[34]  We find no issue with the ease of determining and applying Delaware's common law regarding fraud.

Only two contacts could arguably favor California: the conduct causing the injury occurred in California and/or Massachusetts, and the parties' relationship may be centered in California[35] as it housed Utilities' headquarters before selling its assets. But CLEAResult does not plead whether the Sellers' representations came from California or Massachusetts. The injury occurred in Texas, where CLEAResult is located and incorporated; the only parties organized under California law seek to apply Delaware law and are located in Massachusetts; and EnerNOC is incorporated under Delaware law and located in Massachusetts. Weighing all these factors, Delaware has the "most significant relationship" to the transaction and parties. Delaware law applies to CLEAResult's fraudulent inducement and fraud claim.

### 2. CLEAResult pleads fraudulent inducement based on the Sellers' representations during due diligence.

CLEAResult pleads a claim for fraudulent inducement based on the Sellers' representations made during the course of due diligence. "In order to state a claim for fraud or fraudulent inducement, a plaintiff must plead with particularity the following elements: (1) a false representation of material fact; (2) the defendant's knowledge of or belief as to the falsity of the representation or the defendant's reckless indifference to the truth of the representation; (3) the defendant's intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance. An action for fraud can occur not only where there is an overt misrepresentation but may exist where there is a deliberate concealment of material facts or silence when one ha[s] a duty to speak."[36]

CLEAResult alleges Sellers made misrepresentations of material fact and concealed material facts from CLEAResult during the due diligence.[37] CLEAResult alleges Sellers had knowledge of the falsity of the representations.[38] CLEAResult alleges Sellers acted with the

8

intent to induce CLEAResult to sign the Agreement.³⁹ CLEAResult alleges it justifiably relied on the misrepresentations from Sellers about the current state of Utilities.⁴⁰ CLEAResult alleges it suffered damages caused by its reliance on Sellers misrepresentations and concealment of material facts.⁴¹

The Sellers argue CLEAResult fails to satisfy Federal Rule of Civil Procedure 9(b) requiring a plaintiff "state with particularity the circumstances constituting fraud."⁴² CLEAResult may satisfy Rule 9(b) "by pleading the 'date, place or time' of fraud, or through 'alternate means of injecting precision and some measure of substantiation into their allegations of fraud'" and "also must allege who made a misrepresentation to whom and the general content of the misrepresentation."⁴³ CLEAResult identifies the Sellers' employees who allegedly made misrepresentations, identifies specific communications between the Sellers' employees and between the Sellers and CLEAResult, and provides at least the general content of each representation or specific language. CLEAResult also identifies how the Sellers misrepresented material information during the course of due diligence. CLEAResult's 54 page 185 paragraph Complaint satisfies Rule 9(b).

### 3. CLEAResult's fraud claim based on the Sellers' representations after signing the Agreement improperly "bootstraps" its breach of contract claim.

CLEAResult's fraud claim based on representations after the Agreement is barred because it is improperly bootstrapped and duplicative of its breach of contract claim. "A fraud claim can be based on representations found in a contract; however, 'where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort.'"⁴⁴ "Essentially a fraud claim alleged contemporaneously with a breach of contract claim may

9

survive, so long as the claim is based on conduct that is separate and distinct from the conduct constituting breach."[45] "Allegations that are focused on inducement to a contract are not barred by the bootstrapping doctrine."[46]

CLEAResult alleges the Sellers made misrepresentations after the parties signed the Agreement on May 3 and before the transaction closed on May 31.[47] Sellers made these representations to satisfy the Agreement.[48] For example, the parties agreed to condition closing on the closing schedule and certificate outlined in the Agreement.[49] CLEAResult also alleges the Sellers are liable for breach of contract for these same representations.[50] Although CLEAResult attempts to frame the misrepresentations as an inducement to close on the agreement, the Sellers made the representations in performing under the Agreement.[51] CLEAResult's fraud claim is based entirely on a breach of the Agreement, not a violation of an independent duty imposed by law, and is improperly bootstrapped to CLEAResult's breach of contract claim.

### C. Conclusion

CLEAResult pleads a claim for breach of contract subject to several detailed factual defenses to be explored in discovery. CLEAResult also pleads a claim for fraudulent inducement to the extent the claim is based upon the Sellers' representations and concealments during the course of due diligence before signing the Agreement but not for fraud for breaching conditions in the Agreement before closing. In the accompanying Order, we grant the Sellers' motion to dismiss the post-May 3, 2016 Agreement claims based on fraud but otherwise deny their motion.

---

[1] ECF Doc. No. 7, ¶ 20.

[2] *Id.* ¶ 21.

³ *Id.* ¶ 22.

⁴ *Id.* ¶ 23.

⁵ *Id.* ¶ 23.

⁶ *Id.* ¶ 26-28.

⁷ *Id.* ¶ 31(a).

⁸ *Id.* ¶ 31(b).

⁹ *Id.* ¶31(c).

¹⁰ *Id.* ¶ 31(d).

¹¹ *Id.* ¶ 36.

¹² *Id.* ¶ 37.

¹³ *Id.* ¶ 38.

¹⁴ *Id.* ¶ 39.

¹⁵ *Id.* ¶ 49.

¹⁶ *Id.* ¶ 43-46.

¹⁷ *Id.* ¶ 45-46.

¹⁸ *Id.* ¶ 108.

¹⁹ In deciding a motion to dismiss under Rule 12(b)(6), we accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party, but we "are not compelled to accept unsupported conclusions and unwarranted inference, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Edinboro Coll. Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567, 572 (3d Cir. 2017) (quoting *In re Vehicle Carrier Serv. Antitrust Litig.*, 846 F.3d 71, 79 n.4 (3d Cir. 2017)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Maiden Creek Assoc., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 189 (3d Cir. 2016) (quoting *Ascroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While the plausibility standard is

not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[20] *VLIW Tech, LLC v. Hewitt Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

[21] ECF Doc. No. 7, ¶ 166.

[22] *Id*. ¶¶ 167-172.

[23] *Id*. ¶ 173.

[24] The Sellers also argue the alleged representations are non-actionable forward-looking estimates and projections and not material fact, and CLEAResult could not justifiably rely on these representations. These defenses raise issues of fact requiring discovery and possibly trial.

[25] The choice of law provision reflects the parties' agreement, "This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the state of Delaware or any other jurisdiction." ECF Doc. No. 7-1, p.51.

[26] *Pac. Employers Ins. Co. v. Global Reins. Corp. of Am.*, 693 F.3d 417, 432 (3d Cir. 2012) (citation omitted).

[27] *Opengate Capital Grp. LLC v. Thermo Fisher Sci., Inc.*, No. 13-1475, 2014 WL 3367675, at *10 (D. Del. 2014) (citing *Coface Collections N. Am. Inc. v. Newtown*, 430 F. App'x 162, 167 (3d Cir. 2011)).

[28] *Coface Collections N. Am. Inc.*, 430 F. App'x at 167.

[29] *Opengate Capital Grp. LLC*, 2014 WL 3367675, at *10.

[30] 6 Del. C. § 2708.

[31] *See id*. (A choice of law provision selecting Delaware law "shall conclusively be presumed to be a significant, material, and reasonable relationship with [Delaware]").

[32] Restatement (Second) of Conflicts of Laws § 6.

[33] *Id*.

[34] *Arby Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1048 (Del. Ch. 2006) ("To layer the tort law of one state on the contract law of another state . . . makes the outcome of disputes less predictable . . .").

[35] It may also be credibly argued Delaware is where the parties' relationship is centered because the parties' relationship is governed by the asset purchase agreement governed under the laws of Delaware.

[36] *Duffield Assocs. v. Meridian Architects & Engineers, LLC*, No. S10C-03-004, 2010 WL 2802409, at *4 (Del. Super. Ct. 2010) (citation omitted).

[37] ECF Doc. No. 7, ¶¶ 72-89, 137, 157-164, 176.

[38] *Id*. ¶¶ 77-78, 88-89, 140, 177.

[39] *Id*. ¶¶ 1-2, 90-98, 110, 176.

[40] *Id*. ¶¶ 99-104, 137, 156, 178.

[41] *Id*. ¶¶ 108-09, 139, 143, 179.

[42] Fed. R. Civ. P. 9(b).

[43] *NE Revenue Servs., LLC v. Maps Indeed, Inc.*, 685 F. App'x. 96, 102 (3d Cir. 2017) (citation omitted).

[44] *Aviation W. Charters, LLC v. Freer*, No. N14C-09-271, 2015 WL 5138285, at *6 (Del. Super. Ct. 2015) (citations omitted).

[45] *Id*. (citations omitted).

[46] *Id*. (citations omitted).

[47] ECF Doc. No. 7, ¶182.

[48] *Id*. ¶¶ 34, 39, 41, 47.

[49] *Id*. ¶¶ 34, 39.

[50] *Id*. ¶¶ 168, 170.

[51] *EZLinks Golf, LLC v. PMCS Datafit, Inc.*, No. N16C-07-080, 2017 WL 1312209, at *5 (Del. Super. Ct. 2017) ("Nor can a plaintiff devise a claim for fraud 'simply be adding the term 'fraudulently induced' to a complaint.'").